IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDELMIRO PEREZ-GARCIA, JR., <br> Plaintiff, <br> v. <br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> NO. 18-3783 |

Henry S. Perkin, M.J.                                                                          February 26, 2021

## MEMORANDUM

Plaintiff, Edelmiro Perez-Garcia, Jr. ("Plaintiff"), filed this lawsuit for breach of contract, bad faith and a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UPTCPL") to recover damages related to injuries he suffered on October 7, 2016 as a result of a motor vehicle accident in Reading, Pennsylvania. At the time of the accident, Mr. Gonzalez-Padilla, the tortfeasor/third party, possessed liability insurance in the amount of Fifteen Thousand Dollars ($15,000).  The Plaintiff was insured under a policy of automobile insurance issued by Defendant that provided first party medical payments coverage in the amount of Ten Thousand Dollars ($10,000), first party wage loss coverage of Five Thousand Dollars ($5,000), and underinsured motorist coverage in the aggregate amount of One Hundred Thousand Dollars ($100,000).

**I.      HISTORY OF THE CASE.**

This case was originally assigned to the Honorable Joseph F. Leeson, Jr.  Defendant moved for dismissal of the bad faith and Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UPTCPL") claims.  On March 15, 2019, Judge Leeson granted the motion to

dismiss the UPTCPL claim and denied the motion to dismiss the bad faith claim. Regarding the bad faith claim, Judge Leeson noted:

> "'[B]ad faith' on the part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.'" *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994), *appeal denied*, 659 A.2d 560 (Pa. 1995)). A plaintiff must show: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Id.*
>
> Contrary to State Farm's suggestion, the bad faith claim is not based solely on the failure to pay underinsured benefits after having paid first-party benefits. The Amended Complaint also alleges that State Farm had medical documentation establishing that Perez-Garcia's injuries were caused by the motor vehicle accident, but that State Farm, "without medical support" and without a proper investigation, substituted the judgment of its own claim adjuster, a non-medical reviewer, and determined that the injuries were not sustained in the accident. *See* Compl. ¶¶ 18-19, 31-33. At this stage of the proceedings, this is sufficient to state a bad faith claim. *See Scott v. Foremost Ins. Co.*, No. 15-3257, 2015 U.S. Dist. LEXIS 133698, at *6 (E.D. Pa. Sep. 30, 2015) (concluding that the plaintiffs' allegations that the insurer disputed the plaintiffs' estimate without providing a reasonable explanation and with conducting any investigation was sufficient to state a bad faith claim); *Giangreco v. United States Life Ins. Co.*, 168 F. Supp. 2d 417, 423 (E.D. Pa. 2001) (concluding that in light of the witness accounts, even a sober driver may have caused the accident, and a factfinder could reasonably conclude that the insurer, which "did little investigation other than to review the police and toxicology reports," may have acted in bad faith by denying the claim without conducting a reasonable investigation).

*See* Dkt. No. 10, pp. 3-4. The parties consented to the exercise of jurisdiction by a Magistrate Judge and Judge Leeson entered a May 20, 2019 Order pursuant to 28 U.S.C. section 636 (c) and Federal Rule of Civil Procedure 73 referring this case to the undersigned for final disposition. *See* Dkt. No. 18. On November 6, 2020, Defendant moved for partial summary judgment seeking summary judgment on the bad faith claim. *See* Dkt. Nos. 41, 42. On January 13, 2021, partial summary judgment was granted to Defendant, and the bad faith claim was dismissed. *See* Dkt. Nos. 71, 72.

Counsel for the parties agreed to try the remaining breach of contract portion of the case

without a jury and by video due to the Covid-19 pandemic. To that end, they prepared a stipulation which was filed of record and approved by the Court. *See* Dkt. No. 81.

The non-jury trial was held on February 22, 2021. At the beginning of this trial, the Court read the stipulation into the record and asked each counsel if they agreed that this matter may proceed by video. Pursuant to the parties' stipulation, Plaintiff's exhibits P-1, P-2, P-3, P-4, P-5, P-6 and P-7 were admitted into evidence. The stipulation of the parties clearly indicates that the Court is only considering the Plaintiff's knee injury occurring on October 7, 2016 and no other injuries or conditions that may have been set forth in the Plaintiff's Complaint.

The Plaintiff was the sole witness presented during the trial. The Court found his testimony to be credible. The Defendant presented no witnesses and both parties argued their respective case at the conclusion of the trial.

## II.     FINDINGS OF FACT.

The Defendant does not contest liability in this case. On October 7, 2016, the Plaintiff was operating his Jeep Cherokee automobile in the city of Reading, Pennsylvania. At that time, the tortfeasor went through a stop sign and the Plaintiff struck the tortfeasor's right passenger side door causing damage to the front of Plaintiff's vehicle. The Plaintiff testified that at the time of the accident, he heard and felt a pop in his right knee area and immediately felt pain in that knee. He was able to get out of the car and ambulate and ultimately drove his car home. Police and an ambulance reported to the scene, but Plaintiff declined medical attention despite reporting that he felt a burning sensation on the inside of his right knee. The paramedics told him to go to the hospital right away. Later that night due to pain and swelling in his right knee, Plaintiff drove to the Reading Hospital and sought emergency treatment. He was given an x-ray and an

immobilizer brace and crutches, then was discharged and drove himself home.[1]

The Plaintiff thereafter sought the treatment and advice of Dr. Mancuso, an orthopedic surgeon. An MRI ordered by Dr. Mancuso indicated that Plaintiff had a posterior horn medial meniscus tear of his right knee. Dr. Mancuso indicated that the only treatment that he could provide was surgery in the form of arthroscopic surgery to repair the meniscus. The surgery occurred on November 16, 2016. Plaintiff testified that following surgery, he felt throbbing pain and swelling in his knee and he had difficulty standing up in the first few days after surgery. He demonstrated this swelling to the Court by the four photographs which were part of Plaintiff's exhibit number seven. Plaintiff was given Oxycontin for pain as needed after the surgery and he was limited in moving around and using the bathroom, and his knee felt loose and unstable. As part of Plaintiff's post-operative course of treatment, he underwent approximately fifteen (15) sessions of physical therapy. Plaintiff continued to experience great pain during physical therapy. The Plaintiff did not testify that his right knee strength was changed after the accident, although he did state that physical therapy attempted to strengthen his right leg and at times pain prevented his completion of many of the therapy exercises. He specifically noted that he had significant difficulties bending his right knee, had continual swelling and felt a popping sensation on the side of the right knee.

Plaintiff testified that from the date of the accident throughout his course of physical therapy, he used crutches and could put no weight on his right knee without experiencing pain. By Christmas of 2016 he was unable to fully bend his knee and he realized that he was unable to do many of his recreational activities with his grandchildren who were then two and four years

---

[1] There is a divergence in Plaintiff's trial testimony from Plaintiff's August 21, 2018 Statement Under Oath ("SUO"). At trial, he testified that his wife drove him to the hospital but in the SUO, he stated that he drove himself. Despite this difference, the Court finds that on all material facts, the Plaintiff was credible as stated above.

old. Plaintiff also experienced difficulty sleeping due to the pain. He previously slept on his side and he could no longer do that during the period of recovery from the surgery and had to sleep on his back. This did not permit him to sleep fully through the night, and he typically only slept for three hours at a time. Further, Plaintiff was unable to navigate the stairs to the second floor of his home and his bedroom, causing him to sleep on the couch and utilize the half-bath on the first floor.

The medical records admitted as evidence in this case show that the Plaintiff last saw Dr. Mancuso on February 6, 2017. Dr. Mancuso cleared him to go back to work with no restrictions. Although the Plaintiff returned to work with no restrictions, he indicated that his pain and stiffness persisted and he had some difficulty performing all the functions of his job. Plaintiff was employed by United Gas International ("UGI") as a utility helper performing general labor work which required him to install meters at various times and also required him to physically bend, squat, use his legs and use heavy tools to accomplish his work duties. He found that he was in pain and had great difficulty squatting when he returned to work in February 2017. The medical records in evidence do not indicate any treatment after the February 6, 2017 appointment with Dr. Mancuso.

The parties have stipulated that the Defendant is entitled to a credit of $15,000, the policy limit amount paid by the tortfeasor's insurance company. In addition, the Defendant is entitled to a $5,000 credit for first party wage loss coverage against the $15,002 lost wage claim. Finally, the Defendant is entitled to a credit of $27,000 which the Defendant has paid on Plaintiff's UIM claim.

The Court finds that the Plaintiff's lost wages claim in the amount of $10,002 which exceeds the $5,000 paid under Plaintiff's first party benefits is reasonable and causally related to

the accident.

The Plaintiff also makes a claim for past and future pain and suffering and loss of enjoyment of life's pleasures. The Court will award the Plaintiff an additional $21,000 to compensate him for his pain and suffering and loss of life's enjoyment. The Plaintiff could no longer play with his grandchildren as he did prior to the accident, and after the accident he had continued limitations with activities due to continued pain, difficulty sleeping and swelling in his right knee.  Taking the circumstances of this case into account, the Court concludes that this amount accurately reflects the seriousness of the Plaintiff's right knee injury and its consequences. *See Trojecki v. U.S.*, Civ. A. No. 11-5379, 2014 WL 1202554, *7-8, 12 (E.D. Pa. Mar. 21, 2014) ($90,000 awarded for pain and suffering and loss of life's enjoyment in premises liability action for Plaintiff's shoulder injury requiring three surgeries, three courses of physical therapy, Plaintiff had lasting, constant and continuing pain, physical limitations and inability to play with grandchildren); *Baynes v. The Home Depot, U.S.A.*, Civ. A. No. 09-3686, 2011 WL 2313658, at *7 (Schiller, J.) (premises liability action awarding $25,000 damages for pain and suffering where shoulder pain controlled through physical therapy and exercise, Plaintiff no longer able to style hair or play with granddaughter) (citing *Nicholson v. Esteves*, Civ. A. No. 08–3776, 2010 WL 914931, at *7 (E.D. Pa. Mar. 12, 2010) (Bartle, J.) (awarding damages of $75,000 for pain and suffering in non-jury civil rights case where excessively tight handcuffs caused carpal tunnel syndrome, award reduced for lack of timely treatment and injuries not caused by arresting officer's actions but lasting pain and numbness and continuing limitation in use of hand)); *Andrews v. Karras*, Civ. A. No. 97–3414, 1998 WL 754724, at *5-6 (E.D. Pa. Oct. 29, 1998) (Yohn, J.) (discussing damages awards for pain and suffering); *Gregory v. South Hills Movers, Inc.*, 477 F. Supp. 484, 487 (W.D. Pa. 1979) (court denied motion for new trial

following jury award of $15,000 for pain and suffering for torn medial meniscus injury with pain localizing six months after accident); *Smith v. Bowater S.S. Co.*, 339 F. Supp. 399 (E.D. Pa. 1972) ($12,000 award to longshoreman injured when slipped on board; partial tear of medial meniscus of left knee joint, little possibility of recovery without surgery); *Williams v. Jade Co.*, 330 F. Supp. 1183 (E.D. Pa. 1971) ($25,000 to 55 year old longshoreman for job related tear of medial collateral ligament with calcification)).

### III. VERDICT.

After a non-jury trial held on February 22, 2021 and a thorough review of the evidence in this case, the Court finds in favor of the Plaintiff and against the Defendant for a total amount of $31,002 as follows:

1. $10,002 for the claim of lost wages after giving the Defendant credit for the $5,000 paid by first party benefits; and

2. $21,000 for pain-and-suffering and loss of life's pleasures after giving the Defendant credit for $42,000 in prior payments made to Plaintiff ($27,000 UIM benefits and $15,000 third party policy liability limit).

As a result of this verdict and excluding payments made under Plaintiff's first party benefits in his automobile policy with the Defendant, Plaintiff's total monetary compensation for lost wages, pain and suffering and loss of life's pleasures and injuries to the initial torn medial meniscus of the right knee requiring surgery in November of 2016 with follow-up physical therapy until February 6, 2017 is $73,002. This amount includes the prior $27,000 payment from the $100,000 underinsured benefits Plaintiff had in his automobile policy with the Defendant and the prior payment of the $15,000 policy liability limits of the negligent third party. A Judgment and Order consistent with this Memorandum will be docketed separately.